KATHERINE J. TAYLOR, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

No. 39700.

NOVEMBER 12, 1929.

*J. G. Gamble, F. W. Miller,* and *McNett, McNett & Kuhns,* for appellant.

*Roberts & Roberts* and *Jaques, Tisdale & Jaques,* for appellee.

DE GRAFF, J.—On or about June 25, 1923, Katherine J. Taylor (plaintiff-appellee), through her agent, made an interstate shipment of her household goods from Phoenix, Arizona, to Ottumwa, Iowa. The initial receiving carrier was the Arizona & Eastern Railway Company, and the terminal carrier was the appellant, Chicago, Rock Island & Pacific Railway Company. The action is predicated on negligence of the terminal carrier

and its connecting carriers, and the damages sought to be recovered are based upon the damage to the goods in question while in transit.

In the petition of plaintiff she specifically sets out the said articles that were damaged or destroyed, and alleges the reasonable value thereof. The total weight of the shipment was 2,700 pounds, and the articles damaged or destroyed weighed 127 pounds.

The defendant Railway Company in its answer pleads a general denial, and also avers that plaintiff's household goods moved under a written uniform straight bill of lading, dated June 25, 1923, issued by the initial carrier, the Arizona & Eastern Railway Company. One of the provisions in said bill of lading, as specifically pleaded by the defendant, reads as follows:

"Suits for loss, damage, injury, or delay shall be instituted only within two years and one day after delivery of the property, or in case of failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed: provided, that in case the claim on which suit was based was made in writing within six months * * *, suit shall be instituted not later than two years and one day after notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice."

It appears without dispute that, on November 15, 1923, the defendant Railway Company, in writing, returned the supporting papers to the plaintiff, and declined to pay the claim. It further appears, and is so pleaded in the answer, that, on March 7, 1924, the plaintiff commenced her action upon said claim, and that said suit culminated on January 20, 1926, when the plaintiff dismissed her action without prejudice, after the district court in and for Wapello County, wherein said action was pending, had indicated its intention to sustain the motion for a directed verdict in favor of the Railway Company. Thereafter, and on March 24, 1926, the petition in this suit was filed, wherein the same allegations are made as in the first petition in this cause.

In its answer, the defendant Railway Company alleges that more than two years and one day have elapsed since the claim

of plaintiff was declined by defendant, and that this action is barred, under the provisions of the uniform bill of lading filed with and approved by the Interstate Commerce Commission, and that the provisions were in force and effect at the time of the movement of the shipment in question. It is further alleged by defendant, and established by the proofs, that, at the time of the tender of this shipment to the defendant's connecting carrier at Phoenix, Arizona, several rates for this shipment were in force and effect, based upon the value declared by the shipper as to the value of the shipment, and that, in accordance with the bill of lading, the declared value upon the shipment was $10 per hundredweight, and that, in accordance with the provisions of the bill of lading, freight was paid on this shipment on 2,700 pounds at the rate of $4.20 per 100 pounds, or $113.40. This rate was based in accordance with the freight tariffs then on file and approved by the Interstate Commerce Commission. It follows that the carrier's liability was limited to the number of pounds actually damaged (127 pounds) times the rate (10 cents), plus that portion of the freight as the number of pounds damaged bears to the total weight of the shipment.

It cannot be questioned that the release valuation clause in an interstate bill of lading is valid, and limits the recovery to that part of the shipment actually damaged, computed at the release value. The rule, as interpreted by the Supreme Court of the United States, must govern. *Kansas City So. R. Co. v. Carl,* 227 U. S. 639 (57 L. Ed. 683) ; *Western Transit Co. v. A. C. Leslie & Co.,* 242 U. S. 448 (61 L. Ed. 423). See, also, *Heilman & Clark v. Chicago & N. W. R. Co.,* 167 Iowa 313.

The Consolidated Freight Classification No. 3, Western Classification No. 58, I.C.C. No. 16, filed September 29, 1922, was in force on June 25, 1923, when the goods in question were consigned by plaintiff for interstate shipment.

We now turn to the primary and determinative question presented by this appeal. It is the contention of the appellant that appellee's cause of action is barred by the terms of the bill of lading. In response to this contention, appellee answers that Section 11017, Code of 1924, is applicable, and gives her the right to commence the second action when it was commenced. We have heretofore in this opinion quoted the provisions from the bill of lading relative to limiting the time within which a

suit for damages of this character may be commenced. This is a valid provision. *Leigh Ellis & Co. v. Davis*, 260 U. S. 682 (67 L. Ed. 460).

Let us review the factual side of this case material to the proposition. The date of delivery of these goods to plaintiff was July 16, 1923. The first action was commenced March 7, 1924. The denial of plaintiff's claim was made in writing by the carrier on November 15, 1923. The second or instant action was commenced March 24, 1926. It therefore appears that the first action was timely commenced. The question, then, is whether, at the time of the commencement of the second action, the limitation of two years and one day had expired. The answer must be in the affirmative, unless it may be said that the second action may be viewed and deemed a continuance of the first. Section 11017, Code of 1927, reads:

"If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first."

This is a procedural matter. The second action was commenced within six months after the first action was dismissed, and the only question presented is whether the instant action is barred by the contract limitation.

The plaintiff had the burden of alleging and proving facts sufficient to show freedom from negligence in the prosecution of the first action, in order to come within the purview of the provisions of Section 11017.

"To make the section available, it must appear that the failure of the other suit was from some cause except negligence in its prosecution. * * * Logically and legally, the party asking the benefit of such a fact should show it, and especially so where she [plaintiff] is presumed to possess the knowledge and means for so doing. This question has not been ruled in this state, but the practice has been to test the question by the averments of the petition." *Pardey v. Incorporated Town of Mechanicsville*, 101 Iowa 266.

See, also, *Ceprley v. Incorporated Town of Paton*, 120 Iowa

559. In the case at bar, the record is barren of any facts tending to show that plaintiff was not negligent in the prosecution of the first action, and the statement in the petition that said dismissal was not made "on account of negligence in the prosecution thereof" is a mere conclusion.

However, it may be said, in passing, that the pleading and absence of proof are not determinative of the proposition relied upon by plaintiff.

Section 11017, herein quoted, was under discussion in *Harrison v. Hartford Fire Ins. Co.*, 102 Iowa 112. At the time the foregoing decision was made, Section 11017, Code of 1927, was embodied in Chapter 2 of Title XVII, Code of 1873. In the *Harrison* case it was held that the plaintiff's claim was barred unless the section heretofore quoted had application. The question presented, therefore, was whether said statute was applicable to a contract limitation. It is said:

"The general tenor of the authorities is to the effect that it is not, for the reason that the rights of the parties arise out of contract, which relieves them from the general limitations of the statute, and as a consequence, from its exceptions also."

The opinion then reviews our prior cases involving this statute, and differentiates such cases from the principal case, and overrules the case of *Jacobs v. St. Paul F. & M. Ins. Co.*, 86 Iowa 145, in so far as it holds to a contrary doctrine as to the statute in question. The *Harrison* case authoritatively decides the question, and squarely holds that the statute does not apply, "as a general rule, to limitations by contract." In the case at bar, we are dealing with a valid contract limitation, and it follows that Section 11017 has no application, under the instant facts. In view of this interpretation, this cause must be, and it is,—*Reversed*.

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.